**Michael Fuller, OSB No. 09357**
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-222-2000

**Kim Sordyl, OSB No. 031610**
Sordyl Law LLC
422 NW 13th Ave # 751
Portland, Oregon 97209
503-502-1974

**Emily Templeton**
Court Certified Law Clerk
OlsenDaines

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **A.B.** <br><br> Plaintiff <br><br> vs <br><br> **DR. JASON CAMPBELL** and **OREGON HEALTH & SCIENCE UNIVERSITY** <br><br> Defendants | Case No. 3:21-cv-311 <br><br> **SEXUAL ASSAULT COMPLAINT** <br><br> 28 U.S.C. § 1332 <br><br> Demand for Jury Trial |

**SEXUAL ASSAULT COMPLAINT** – Page 1 of 39

**1.**

**JURISDICTION AND THE PARTIES**

This Court has jurisdiction under 28 U.S.C. § 1332 because plaintiff and Dr. Campbell are citizens of different states and the amount in controversy requirement is met.

**2.**

Plaintiff is a citizen of Oregon. Dr. Campbell is a citizen of Florida.

**3.**

Defendant Oregon Health & Science University (OHSU) is a public Oregon university located in Portland, Oregon. During the time periods at issue, OHSU employed the individuals involved in this case below.

**4.**

Dr. Campbell, OHSU Resident, aka the Tik Toc Doc.

**5.**

Dr. Esther Choo, OHSU Professor of Emergency Medicine.

**6.**

Dr. Lalena Yarris, OHSU Emergency Medicine Residency Program Director.

**7.**

Dr. Michael Aziz, OHSU Professor of Anesthesiology.

**8.**

Dr. Sharon Anderson, OHSU Executive Vice President.

**9.**

Dr. Stephen Robinson, OHSU Interim Chair, Department of Anesthesiology.

**10.**

Dr. Oscar John Ma, OHSU Chair, Emergency Medicine.

**11.**

Dr. Emily Baird, OHSU Professor of Anesthesiology and Program Director.

**12.**

Dr. Michael Bonazzola, OHSU Chief Medical Officer, Practice Plan.

**13.**

Ms. Linda Strahm, OHSU Director, School of Medicine Human Resources.

**14.**

Ms. Laura Stadum, OHSU Title IX Coordinator.

**15.**

Mr. Dan Forbes, OHSU Vice President, Human Resources, aka Peter Pumpkin Eater.

**16.**

Mr. David Robinson, PhD, OHSU Executive Vice Provost.

**17.**

Mr. Greg Moawad, OHSU Interim Vice President of Human Resources.

**18.**

Mr. Patrick Frengle, OHSU employee, aka Aanus McFadden, Roy Vragina.

**SEXUAL ASSAULT COMPLAINT** – Page 3 of 39

**19.**

**FACTUAL ALLEGATIONS**

This complaint's allegations are based on personal knowledge as to plaintiff's behavior, and made on information and belief as to the behavior of others.

**20.**

During the time periods at issue, plaintiff was an employee at the Veterans Affairs Medical Center (the "VA Hospital") in Portland, Oregon. Plaintiff requests to proceed in this case under a pseudonym because she faced retaliation and vandalism after reporting Dr. Campbell's assault to OHSU. Mr. Paul Carlson is a Police Detective at the VA Hospital who investigated plaintiff's allegations of assault against Dr. Campbell.

**21.**

OHSU is a public teaching hospital which primarily operates in Portland, Oregon. In Dr. Campbell's position as a resident and employee at OHSU, Dr. Campbell sometimes worked at the VA Hospital and had a pass to access the premises of the VA Hospital where plaintiff worked. The VA Hospital is located next to OHSU on Marquam Hill, connected by a sky bridge. Dr. Campbell is a male, approximately thirty-one years old, standing six-feet, two-inches tall, and is a former collegiate student-athlete with an athletic build. Plaintiff is a female standing just under five feet tall with a slim build.

**22.**

Beginning in January of 2020, while acting in the scope and course of his capacity as a resident and employee of OHSU, Dr. Campbell began harassing plaintiff via text messages, pornographic photos, and sexually-charged social media messages. For instance, on January 24, 2020, Dr. Campbell sent plaintiff a picture of his erection. On January 24, 2020, Dr. Campbell sent plaintiff a video message on Instagram that said "you look tasty." On January 28, 2020, Dr. Campbell sent plaintiff a text that said in part "I'm fit, you're fit, there's the orgasm."



**23.**

On March 12, 2020, at the VA Hospital, while acting in the scope and course of his capacity as a resident and employee of OHSU, Dr. Campbell was working in scrubs for OHSU, and while he had a girlfriend, Dr. Campbell attempted to and did in fact cause harmful offensive contact with plaintiff, causing plaintiff severe, substantial, enduring emotional distress, discomfort, and interference with usual life activities.

**24.**

Specifically, Dr. Campbell went into plaintiff's office area, snuck up quietly behind plaintiff and without plaintiff's express or implied consent, pushed his body and his erection forcibly onto plaintiff's backside, pushing her into the desk in front of her. Plaintiff was terrified and yelled at Dr. Campbell to leave. Plaintiff followed up with a written message, "Don't EVER surprise me by getting in my physical space." Dr. Campbell messaged, "I should've asked. I'm sorry."

**25.**

Even after plaintiff told Dr. Campbell not to get in her personal space again, Dr. Campbell messaged her the following day on March 13, 2020, "I'm feeling lucky about another hug today from my fave ED star," and "Are you home or still here? I'll get my hug anywhere," and "I just want to hug you from behind without you yelling at me." Dr. Campbell later attempted to invite himself to plaintiff's home to bring her soup or tea.

**26.**

On April 9, 2020, plaintiff reported details of Dr. Campbell's sexual harassment and assault to her supervisors, and also provided screenshots of the sexual messages Dr. Campbell had sent to her. On that same day, the VA Hospital informed Dr. Campbell and his supervisor of plaintiff's complaint of misconduct.

**27.**

On April 17, 2020, plaintiff informed two OHSU Public Safety officers that they would be contacted by the VA police because she had been harassed by Dr. Campbell.

**28.**

According to OHSU, in late March or early April 2020, Dr. Campbell reported to Dr. Emily Baird, a Professor of Anesthesiology and Perioperative Medicine and Program Director of Resident Education, that the VA Hospital human resources team had contacted him about an incident, and that he had "fallen into a woman" at the VA Hospital and was under investigation for it.

**SEXUAL ASSAULT COMPLAINT** – Page 7 of 39

**29.**

Dr. Baird later stated that she found this "fishy." Dr. Baird is a mandatory reporter. On information and belief, Dr. Baird took no action on Dr. Campbell's confession.

**30.**

On April 17, 2020, plaintiff made a detailed report, in writing, of Dr. Campbell's sexual harassment and assault to OHSU's Title IX coordinator, Ms. Laura Stadum, and to VA Hospital Police Detective, Mr. Carlson. Dr. Campbell refused to be interviewed by Detective Carlson.

**31.**

On April 23, 2020, plaintiff had a phone meeting with Ms. Stadum and Detective Carlson about steps moving forward in working with the Affirmative Action and Equal Opportunity (AAEO) department. Ms. Stadum informed plaintiff that she had very recently informed Dr. Campbell of plaintiff's allegations of misconduct, and that Dr. Campbell said, "This is the first I'm hearing of it." Plaintiff informed Ms. Stadum that Dr. Campbell and his supervisor had already been notified by VA personnel on April 9, 2020.

**32.**

On or about April 9, 2020, plaintiff reported Mr. Campbell's sexual assault to an OHSU Assistant Professor. The Assistant Professor informed plaintiff that this was the second time that a woman reported to them that Dr. Campbell had engaged in a sexual assault.

**SEXUAL ASSAULT COMPLAINT** – Page 8 of 39

**33.**

The other alleged victim was an OHSU student and employee, and had come to the Assistant Professor crying over the assault. According to the Assistant Professor, Dr. Campbell assaulted the employee in a similar manner. The Assistant Professor is a mandatory reporter. According to OHSU, the Assistant Professor did not report Dr. Campbell's alleged misconduct.

**34.**

OHSU's ongoing violations of the mandatory reporting rules paved the way for plaintiff to be sexually harassed and assaulted by Dr. Campbell the following year.

**35.**

On or about April 9, 2020, plaintiff contacted the alleged prior victim of Dr. Campbell and requested the details of Dr. Campbell's alleged misconduct. The victim told plaintiff that over one year prior, Dr. Campbell asked the alleged victim to "jerk him off." The alleged victim refused and "got up to leave, and was putting my shoes on and he pushed me against the door and grabbed my hand and put it on him and he said 'don't you like my thick cock?'" The alleged victim also stated that she was afraid of Dr. Campbell, and afraid of making him angry.

**SEXUAL ASSAULT COMPLAINT** – Page 9 of 39

**36.**

In April of 2020, OHSU opened an investigation into plaintiff's complaint. After the investigation started, the prior alleged victim of Dr. Campbell informed plaintiff that Dr. Michael Aziz, an OHSU employee and Professor of Anesthesiology, began coming into the alleged victim's workspace to hover and stare at her. The alleged victim said this also made her fearful. Retaliation for reporting sexual assault is a violation of Title IX policy and law.

**37.**

Both plaintiff and Dr. Campbell were subject to OHSU's investigation. Plaintiff provided OHSU with evidence and witnesses. According to OHSU investigators, Dr. Campbell claimed to have destroyed his electronic messages.

**38.**

On August 17, 2020, OHSU issued its investigative findings. OHSU concluded that defendant Dr. Campbell had violated its policies and code of conduct by repeatedly sending electronic messages of a sexual nature to plaintiff, including and not limited to a picture of his erection through scrub pants, despite multiple warnings from plaintiff that she was not interested in any sort of romantic or sexual relationship; and approaching plaintiff from behind in her office at the VA Medical Center and pressing his front side against her backside without express or implied consent. OHSU did not address any violations of law or civil liability.

**39.**

In November of 2020, after reporting to OHSU that Dr. Campbell had assaulted her, plaintiff's car was vandalized with spray paint at her home. On November 9, 2020, plaintiff notified the Portland Police. The investigation is ongoing.

**40.**

During the time periods at issue, attorney Mr. Moawad served as OHSU's Interim Vice President of Human Resources, AAEO, and Title IX Compliance.

**41.**

Despite OHSU having an attorney, Mr. Moawad, in charge of its Title IX compliance, OHSU was out of compliance until 2016 in that OHSU did not have a designated Title IX coordinator to handle and track complaints of sexual misconduct.

**42.**

In 2016, OHSU added "Title IX coordinator" to Ms. Stadum's title. Ms. Stadum was already serving as OHSU's AAEO Director. Ms. Stadum reports directly to Mr. Moawad. In August of 2019, OHSU's Vice President of Human Resources, Dan Forbes was caught trolling a union on Twitter under the name "Peter Pumpkin Eater." Forbes, had been "liking" the misinformation posted by OHSU employee Patrick Frengle, an OHSU manager, who posted under the names "Aanus McFadden" and "Roy Vragina." Forbes was permitted to remain at OHSU until November of 2019 in order to transition HR duties to Greg Moawad.

**SEXUAL ASSAULT COMPLAINT** – Page 11 of 39

**43.**

**Sexual Misconduct is Buried at OHSU**

OHSU's environment is one in which sexual misconduct is permitted. OHSU's leaders, who are mandatory reporters, do not report sexual misconduct. Rather, they negligently and actively allow and tolerate it. Perpetrators of alleged sexual misconduct are praised, protected, and even glorified. Victims are not protected– they are shamed, dismissed, and subjected to retaliation. Witnesses are not required to participate in investigations. This culture thrives despite both knowledge and media coverage of the high numbers of reports of sexual misconduct at OHSU. OHSU's self-described national expert and advocate against sexual misconduct appeared flummoxed after receiving reports of sexual misconduct, but she chose not to report them.

**44.**

Rather than take action to stop sexual misconduct, OHSU's Title IX and AAEO leadership team merely offer "awareness campaigns" and trainings while failing to hold perpetrators, or their enablers, accountable. In fact, they negligently disregard their own AAEO and Title IX policies and procedures, with no accountability.

**45.**

OHSU's permissive behavior perpetuates high numbers of sexual assaults on and around its campus, including assaults committed by its own employees. OHSU deliberately and negligently has shown indifference to sexual misconduct including the following:

**46.**

In March of 2017, OHSU conducted a faculty survey which revealed to its leaders that it had serious problems with sexual misconduct, but OHSU has not taken meaningful action to stop the misconduct. Promises to do so came from the top.[1]

**47.**

Vice President, Mr. Moawad, said: "Aggressive action is being taken to deal with harassment and discrimination that resulted from ethnic, racial and gender incidents." In 2020, Ms. Stadum stated that she was unaware of any action taken by Mr. Moawad, and that her office was not asked to take any action. Ms. Stadum also stated that OHSU did not reach out to those who reported discrimination.

---

[1] https://www.thelundreport.org/content/ohsu-faculty-share-concerns-about-discrimination-harassment-distrust-administration-feel

**SEXUAL ASSAULT COMPLAINT** – Page 13 of 39

**48.**

Executive Vice Provost, Mr. David Robinson, PhD, stated: "We do have harassment and discrimination going on, and it's something we need to deal with; in the future I want those numbers to be zero." Mr. Robinson also said:"We have no tolerance for discrimination, and intend to take a deep dive to come up with initiatives to address these problems."

**49.**

In February of 2019, OHSU's researchers published a study that found female surgeons were subject to gender discrimination while performing procedures.[2]

**50.**

On March 11, 2019, OHSU promoted Dr. Kenneth Azarow to Chair of the Department of Surgery, despite his admission to engaging in sex discrimination in wages, and despite being sued for sex discrimination and retaliation against a female employee.

**51.**

On March 11, 2019, OHSU's second-in-command, Dr. Sharon Anderson, who is paid over $980,000 per year, has worked for OHSU for nearly 30 years, and oversees nearly 2,500 faculty representing 19 clinical departments, seven basic science departments, and multiple research centers, responded to a question in front of surgeons and residents about how to handle a sex harassment complaint.

---

[2] https://www.sciencedirect.com/science/article/abs/pii/S0002961018305294

**SEXUAL ASSAULT COMPLAINT** – Page 14 of 39

**52.**

Her flippant response is revealing: "Stuff happens all the time … and leaders hear about stuff … and some of it – not necessarily harassment or discrimination but just sort of um uh possibly inappropriate things you hear about … if it's somebody that you know is not a 'chronic offender' you can sort of sit down and have a heart to heart talk and say 'cut it out' um but Ken [Azarow] remembers the training better than I do." Dr. Anderson's response shows just how indifferent OHSU is to sexual misconduct.

**53.**

Dr. Anderson's comments are on video and were made part of a federal court Title IX and sex discrimination complaint against OHSU's leadership team.

**54.**

In September of 2019, OHSU's leadership team published a study showing sex discrimination in compensation.

**55.**

In 2019, OHSU conducted a survey of its staff and students which focused on sexual harassment and discrimination. 5,300 people responded to the poll. The results, issued in January of 2020, indicated a high prevalence of sexual misconduct. According to a media report, 26% of respondents said they had been the victim of sexual misconduct within the last three months, while 22% said it had happened a year or two prior to the study.

**SEXUAL ASSAULT COMPLAINT** – Page 15 of 39

**56.**

"One-third of staff and students who responded said they'd experienced sexual misconduct in the last five years; 34% said discrimination was somewhat, very or extremely problematic at OHSU; 20% said they'd witnessed discrimination within the past year; 15% said they'd personally been discriminated against in the past 12 months; and nearly 60% said they feared they would be retaliated against for reporting a problem." OHSU refused interviews and issued a press release indicating its core values included diversity and inclusion.

**57.**

OHSU does not conduct exit interviews of employees who resign even though they would help inform OHSU of sexual misconduct in its workplace.

**58.**

OHSU's employees are not required to participate in investigations into sexual misconduct. OHSU does not investigate violations of law.

**59.**

Several sexual misconduct complaints have been filed against OHSU, and OHSU routinely and negligently denies the allegations and infers that the women are making false claims.

**60.**

**Title IX Policies Are Routinely Violated By OHSU Leaders**

OHSU's AAEO Title IX policy includes: "Who must report: mandatory reporters. OHSU requires all supervisors, managers, department heads, faculty members, executives and administrators who receive a report of discrimination, harassment or retaliation — including sexual misconduct, sexual assault, stalking, domestic violence and interpersonal violence — to promptly notify AAEO, the Title IX Coordinator, or their HR Business Partner. If you are unsure whether you need to report a concern, call AAEO."

**61.**

OHSU's AAEO Title IX policy further provides: "Do not wait for someone to complain if you know or suspect sexual misconduct is occurring or has occurred; Do not attempt to investigate or resolve the situation on your own; Individuals who are asked to participate in an investigation are required to fully cooperate."

**62.**

OHSU faculty and leaders display deliberate indifference to Title IX and allow sexual misconduct to thrive.

**63.**

**OHSU's national expert on reporting sexual harassment:
"It's never worth it. Never."**

Dr. Esther Choo is OHSU Professor of Emergency Medicine and founder of the national Times Up Healthcare. [3] Dr. Choo traveled to New York City in January of 2019 to kick off and promote Times Up Healthcare. She also recruited OHSU's Ms. Stadum to become a founder. Times Up Healthcare and Dr. Choo have received significant media and professional attention, and both claim to address sexual misconduct and discrimination in the workplace. "We insist upon a world where everyone is safe and respected at work. A world where women have an equal shot at success and security. A world where no one lives in fear of sexual harassment or assault."

**64.**

OHSU touts Dr. Choo as an expert in sexual harassment and gender equity in the medical workplace. She is a national speaker on the subject. Dr. Choo has over 185,000 Twitter followers. [4]

**65.**

On or about March 31, 2020, plaintiff reported to Dr. Choo, in writing, the details and screenshot evidence of Dr. Campbell's sexual harassment and assault on plaintiff. Dr. Choo responded via text, "Ugh, I'm giving him feedback."

---

[3] "By helping change culture, companies, and laws, TIME'S UP Now aims to create a society free of gender-based discrimination in the workplace and beyond. We want every person — across race, ethnicity, religion, sexuality, gender identity, and income level — to be safe on the job and have equal opportunity for economic success and security." https://timesupnow.org/about/
[4] https://twitter.com/choo_ek

**SEXUAL ASSAULT COMPLAINT** – Page 18 of 39

**66.**

On April 9, 2020, plaintiff reported to Dr. Choo, in writing along with screenshot evidence, that Dr. Campbell had also sexually harassed and sexually assaulted an OHSU employee, but that the victim feared reporting it. On April 10, 2020, Dr. Choo messaged plaintiff, "It's never worth it. Never." Her text was in regards to reporting sexual harassment. Plaintiff then gave Dr. Choo screenshot evidence that an OHSU Assistant Professor had received two reports of sexual misconduct by Dr. Campbell. Dr. Choo responded, "OMG How should we handle." Dr. Choo is a mandatory reporter. Title IX policy requires a prompt report to AAEO Ms. Stadum – Dr. Choo's TimesUp co-founder.

**67.**

Dr. Choo then offered to "sit down with" Dr. Campbell or have his program director do it. This response follows Dr. Sharon Anderson's direction to sit down with sexual harassers and tell them to "cut it out." OHSU's Title IX policy states, "Do not attempt to resolve the situation on your own." On information and belief, Dr. Choo did not report that Dr. Campbell had allegedly sexually harassed and sexually assaulted two women.

**68.**

Two months later, on June 5, 2020, Dr. Choo posed for a photo with Dr. Campbell during a protest. Dr. Campbell posted it on Twitter and tagged Dr. Choo. On June 12, 2020, Dr. Campbell challenged Dr. Choo to help him get over 50,000 views of one of his videos. In October 1, 2020, Dr. Choo publicly engaged Dr. Campbell in a Twitter fundraiser. Specifically, she tagged him as her friend with a big following and big heart.



**69.**

When plaintiff objected to what she perceived as Dr. Choo condoning sexual misconduct, Dr. Choo responded: "You never told me about assault of you." This is not true. Plaintiff told Dr. Choo that she and another woman had been sexually assaulted by Dr. Campbell. Dr. Choo also said: "I don't need policing by White women."

**SEXUAL ASSAULT COMPLAINT** – Page 20 of 39

**70.**

**OHSU Residency Director Appears to Condone Sexual Misconduct**

Dr. Lalena Yarris works alongside Dr. Choo as a Professor of Emergency Medicine. Dr. Yarris is also the Residency Program Director. In this role, she is in charge of legal compliance and ensuring that medical students have a safe learning environment. In late March of 2020, Dr. Yarris had been in a Tik Tok dance video with Dr. Campbell. With safety considerations in mind, on March 31, 2020, plaintiff reported to Dr. Yarris, in writing, evidence of Dr. Campbell's sexual misconduct. Dr. Yarris is a mandatory reporter and in charge of student safety. On information and belief, Dr. Yarris never took action on the evidence or the reports that Dr. Campbell had sexually harassed and sexually assaulted two women.

**SEXUAL ASSAULT COMPLAINT** – Page 21 of 39

**71.**

On November 3, 2020, Dr. Yarris starred in another Tik Tok video with Dr. Campbell in which they dance together about voting in the Presidential election and Dr. Yarris pretends to reel Dr. Campbell in with an imaginary fishing pole. When plaintiff objected to Dr. Yarris's condoning of sexual misconduct, she replied, "I believe you and your experience and I also have to rely on my own experience in deciding how to interact with him…" Dr. Campbell's other alleged victim saw the video and said it was"disrespectful and insane the ED residency director knows and is hanging out with him."

**72.**

**At Least 13 OHSU Employees Received Reports of Dr. Campbell's Sexual Misconduct – Six are in Leadership Roles.**

**Most Took No Action or Otherwise Violated Title IX Rules.**

On April 9, 2020, plaintiff reported details of the sexual harassment and assault to her supervisors, and the VA Hospital's Equal Employment Opportunity Director. Plaintiff also provided screenshots of the sexual messages Dr. Campbell had sent to her. That same day, the VA Hospital notified Dr. Campbell and his supervisor, Dr. Stephen Robinson, the Chair of OHSU's Department of Anesthesiology, of plaintiff's complaint. Dr. Robinson is a mandatory reporter. On information and belief, Dr. Robinson took no action on plaintiff's complaint that Dr. Campbell had sexually harassed and sexually assaulted her, and Dr. Robinson was not even interviewed by OHSU investigators.

**SEXUAL ASSAULT COMPLAINT** – Page 22 of 39

**73.**

On April 17, 2020, plaintiff reported, in writing, details of the sexual harassment and assault directly to OHSU's Title IX coordinator Ms. Stadum, and to VA Hospital Police Detective Paul Carlson.

**74.**

On April 17, 2020, plaintiff texted two OHSU Public Safety officers that they would be contacted by the VA police because she had been harassed by Dr. Campbell. OHSU Public Safety officers did not participate in any investigation or take safety measures.

**75.**

**Title IX Coordinator Violates OHSU's Title IX Policy**

On April 23, 2020, plaintiff had a phone meeting with OHSU's Title IX coordinator, Ms. Stadum, and Detective Carlson, about steps moving forward in working with her AAEO department. Ms. Stadum informed plaintiff that she had just recently informed Dr. Campbell of plaintiff's allegations of sexual misconduct, and that Dr. Campbell said: "This is the first I'm hearing of it." Plaintiff informed Ms. Stadum that VA personnel had already notified Dr. Campbell and his supervisor on April 9, 2020. Ms. Stadum asked plaintiff, "Who is Dr. Campbell's supervisor?" OHSU's Title IX policy states: "Upon notice of a complaint, AAEO will inform HR and the supervisor of the respondent that AAEO will investigate. Apparently, AAEO Director/Title IX Coordinator Ms. Stadum did not follow OHSU's policy and did not "inform the supervisor of the respondent."

**SEXUAL ASSAULT COMPLAINT** – Page 23 of 39

**76.**

During this same meeting, plaintiff informed Ms. Stadum that another OHSU employee claimed to have been sexually assaulted by Dr. Campbell, and read aloud from screenshots the details of the assault. Plaintiff also informed Ms. Stadum that the other victim said she was traumatized, feared retaliation by OHSU, and was afraid of Dr. Campbell. Ms. Stadum responded: "Do you have permission to share this assault?" Plaintiff replied that she did.

**77.**

Detective Carlson told Ms. Stadum and plaintiff that he had reached out to OHSU Public Safety Department but that they declined to participate in any interviews of Dr. Campbell because the assault occurred on federal property. Dr. Campbell later lawyered up and refused to be interviewed by Detective Carlson.

**78.**

Ms. Stadum also apologized to plaintiff for the handling of plaintiff's prior complaint of sexual harassment against OHSU's Chair of Emergency Medicine, Dr. John Ma. Ms. Stadum assured her that the investigator in that matter, an attorney, was no longer with OHSU. Ms. Stadum promised the investigation into Dr. Campbell would be better. Without putting any safety measures into place, Ms. Stadum handed the complaint off to a new OHSU employee, an immigration attorney, for investigation.

**SEXUAL ASSAULT COMPLAINT** – Page 24 of 39

**79.**

**Title IX Investigator's Retaliatory Behavior Causes
Further Trauma to Plaintiff**

OHSU's Title IX policy does not require victims to protect themselves from harm or retaliation. It states: "AAEO has discretion to take steps to ensure the safety and well-being of the parties involved and the OHSU community before and during an investigation." On April 29, 2020, OHSU's attorney and investigator admitted that they had not put any safety measures in place to protect plaintiff or other women from another assault or retaliation. The investigator stated: "Do you want me to call campus safety for you?" OHSU's in-house employment attorney Emily Shults said: "We don't take safety measures unless there is a crime." Plaintiff specifically requested a no-contact order, but both the investigator and Greg Moawad refused, stating it "would not be appropriate." Plaintiff was terrified, and OHSU's behavior compounded her fear. Regardless, plaintiff cooperated fully in the investigation.

**80.**

Despite Ms. Stadum's apology and assurances, OHSU's investigator repeatedly said she had no knowledge of plaintiff's experience in filing a sexual harassment complaint with OHSU against Dr. Ma, or of the problems in the prior investigation. What followed was more victim shaming, fumbling, blaming, and misconduct by OHSU's investigator.

**SEXUAL ASSAULT COMPLAINT** – Page 25 of 39

**81.**

At least three times, OHSU's investigator described the sexual assault as a "hug" from behind, and repeatedly asked plaintiff why she failed to report the assault sooner. Plaintiff repeatedly objected to describing the assault as a "hug," and explained that asking a victim "why did you wait?" is a victim-shaming question that should not be asked. Plaintiff also informed the investigator that reporting sexual harassment to OHSU regarding Dr. Ma was "one of the worst experiences of my life." Plaintiff told the investigator that Dr. Ma violated a police no-contact order and OHSU did nothing. Plaintiff's son had been threatened by Dr. Ma's wife, an OHSU nurse, and OHSU did nothing. Plaintiff said OHSU's handling of sexual misconduct was a "nightmare" and she was scared to provide a report. Plaintiff explained that she ultimately decided to report because Dr. Campbell had assaulted another OHSU employee and she felt she had a duty to act.

**82.**

### Retaliation Reported to OHSU's General Counsel and Vice President Mr. Moawad

On April 30, 2020, plaintiff served OHSU, care of its general counsel, Alice Cuprill-Dumas, with a tort claims notice under ORS 30.275. The notice described the history of sexual misconduct permitted by OHSU, the sexual harassment and assault of plaintiff by Dr. Campbell, and detailed the harassing, retaliatory behavior by OHSU's employees. Ms. Cuprill-Dumas is a mandatory reporter.

**83.**

Given the retaliatory behavior by OHSU's employees, and lack of safety measures, on May 1, 2020, plaintiff reported, in writing, to OHSU Vice President Mr. Moawad, that Dr. Campbell had sexually assaulted an OHSU employee and plaintiff in a very similar manner. Plaintiff reported the retaliation by his staff, and that his staff had taken no action to ensure plaintiff's safety. At this point, 13 OHSU employees had been notified of the sexual misconduct. Mr. Moawad informed plaintiff that for her safety concerns, Dr. Campbell was working off campus on a research project and was told not to contact her.

**84.**

**OHSU's Investigator Attacks Plaintiff's Character**

On June 30, 2020, OHSU issued its "preliminary findings report" that again stated plaintiff reported a "hug from behind," and found that plaintiff made a "false statement" during her interview, and destroyed evidence. None of these things are true. The investigator used these findings to conclude plaintiff had credibility issues. Plaintiff had to extensively disprove these findings by re-providing evidence, proving that she had not made a false statement, and proving she did not destroy evidence.

**85.**

In fact, the investigator was responsible in that she (a) failed to ask questions she later deemed relevant to the investigation or credibility; (b) learned new information but failed to follow up with plaintiff regarding that information; (c) missed that plaintiff already reported the information; (d) concluded evidence was destroyed when it was not; (e) made a mistake in the timeline and in her own questioning of plaintiff; (f) repeatedly claimed plaintiff reported a "hug" when she had not; (g) concluded plaintiff had credibility problems because she did not immediately produce a tangential text (that was later produced), but that Dr. Campbell's failure to produce ANY evidence did not negatively impact his credibility ("Because Campbell has no affirmative obligation to produce messages from his personal phone and/or social media accounts, no adverse inference is taken from Campbell's failure to produce messages for AAEO to consider.")

**86.**

This pattern of retaliatory treatment further compounded plaintiff's emotional distress.

**87.**

On July 8, 2020, OHSU's investigator stated, "Per your request, the word "hugged" will be removed from the first paragraph of the preliminary findings."

**SEXUAL ASSAULT COMPLAINT** – Page 28 of 39

**88.**

On August 17, 2020, OHSU issued its investigative findings. The investigator concluded that Dr. Campbell had violated its policies and code of conduct by repeatedly sending electronic messages of a sexual nature to plaintiff, including but not limited to a picture of his erection through scrub pants, despite multiple warnings from plaintiff that she was not interested in any sort of romantic or sexual relationship; and approaching plaintiff from behind in her office at the VA Medical Center and pressing his front side against her backside without express or implied consent. Notably, OHSU's investigator failed to address any violations of law, failed to even interview the other alleged victim, and failed to interview Dr. Campbell's supervisor, Dr. Robinson.

**89.**

**OHSU Offers, then Denies Mental Health Therapy**

OHSU's "supportive measures" for sexual assault victims are also traumatizing. At the repeated suggestions of Ms. Stadum and the investigator, plaintiff requested that OHSU cover the cost of mental health therapy that she needed as a result of OHSU's behavior. On September 9, 2020, OHSU agreed to pay approximately $6,000 directly to plaintiff's health care provider.

**90.**

On September 30, 2020, OHSU informed plaintiff's healthcare provider that it would not pay for her mental health therapy because OHSU's sexual misconduct fund had run out of money. OHSU's employee Ms. Shults later stated OHSU would pay for medical treatment on the condition that plaintiff sign a full release of claims. This retaliatory behavior further added to plaintiff's emotional distress.

**91.**

On November 8, 2020, plaintiff's car was vandalized with spray paint at her home. Plaintiff informed OHSU and it does not appear OHSU took any meaningful action in response.

**92.**

**OHSU's History and Pattern of Sexual Misconduct
and Retaliation Against Plaintiff**

From June of 2017 to October of 2018, plaintiff was sexually harassed and stalked by former OHSU Emergency Medicine Chair Dr. Ma. Plaintiff was also harassed and stalked by Dr. Ma's wife, an OHSU nurse who also made threats to plaintiff's minor child. Plaintiff reported the misconduct to OHSU, but it was not investigated. Despite written and in-person threats from Dr. Ma's wife, OHSU took no action. Dr. Ma's harassment of plaintiff was so fierce, that at one point, OHSU put a "no contact order" in place, which Dr. Ma promptly violated by contacting plaintiff. When plaintiff told him not to contact her, he said he wanted to die. Plaintiff reported the information continued harassment to OHSU's Public Safety.

**93.**

Plaintiff also informed the OHSU psychiatrist who had been treating Dr. Ma. An OHSU Public Safety officer responded to plaintiff by stating that he, the officer, was instructed not to communicate with plaintiff. Another officer informed plaintiff that Dr. Ma's friend and colleague Dr. Michael Bonazzola had stepped into the situation and assured Public Safety that "everything is ok." Dr. Bonazzola is a mandatory reporter. Dr. Esther Choo stated that Dr. Bonazzola's interference was intended to "scare people," as he had no legitimate reason to be involved. OHSU's interactions with plaintiff during this time period primed plaintiff's emotional response to the sexual assault by Dr. Campbell.

**94.**

One year after plaintiff complained, approximately fifty more complaints of sexual discrimination, harassment, and retaliation were filed against Dr. Ma. OHSU opened an investigation that was conducted by OHSU's employee, Ms. Stadum, and an OHSU attorney. These investigators did not inform or interview plaintiff until she found out about the investigation and asked to be interviewed. Investigators claimed they had no knowledge of anything to do with plaintiff's prior complaint. They made this claim despite the fact that OHSU Human Resources Director for the School of Medicine, Linda Strahm, had banned Dr. Ma from entering his own Emergency Department while plaintiff was still working at OHSU. Plaintiff resigned from OHSU and went to work at the VA Hospital where the stalking, harassment and retaliation continued.

**SEXUAL ASSAULT COMPLAINT** – Page 31 of 39

**95.**

Flouting best practices, OHSU allowed Dr. Ma to remain in his leadership position and in the workplace during the investigation. The investigators, OHSU employee, Ms. Stadum and an OHSU attorney, engaged in victim shaming, ignored evidence and failed to follow up on evidence. Investigators blamed plaintiff for not blocking Dr. Ma even though Dr. Ma stated he was suicidal when plaintiff asked him to not contact her, and Dr. Ma had previously warned plaintiff that his wife was on her way to plaintiff's home after threating plaintiff and her young child.

**96.**

Dr. Sharon Anderson informed complainants that their complaints were unsubstantiated and they needed to move on.

**97.**

On March 3, 2019, OHSU employee Ms. Stadum and an OHSU attorney informed plaintiff that her complaints were unsubstantiated, and that she had welcomed Dr. Ma's conduct.

**98.**

After much media attention, and an exodus by physicians in his department, Dr. Ma announced his resignation. Dr. Ma was given a party by OHSU and OHSU issued a statement lauding Dr. Ma's accomplishments. Praise and gratitude came directly from Dr. Sharon Anderson.[5]

---

[5] https://blogs.ohsu.edu/96kmiles/2019/05/13/leadership-transition-in-emergency-medicine/

**SEXUAL ASSAULT COMPLAINT** – Page 32 of 39

**99.**

**OHSU continues to Glorify Dr. Campbell**

On November 3, 2020, only after plaintiff requested an update, OHSU's investigator told plaintiff that Dr. Campbell was no longer employed by OHSU. However, his alleged departure, and OHSU's finding of sexual misconduct did not stop the praise and featuring of Dr. Campbell by OHSU. For example, on November 25, 2020, OHSU's Anesthesiology Department praised its resident Dr. Campbell on Twitter for co-authoring a publication. On January 21, 2021, Dr. Campbell was on national television for attending the Presidential Inauguration parade. OHSU accepted the showering of media praise and attention for its resident. OHSU still has photos of Dr. Campbell on its Instagram and social media accounts. As of January 29, 2021, OHSU's website features Dr. Campbell as its current resident, and Dr. Campbell's blog states that he is an Anesthesiology resident in Portland, Oregon where there is only one teaching hospital – OHSU.

**100.**

**CAUSES OF ACTION**

**Claim 1 – Sexual Assault against Dr. Campbell and OHSU**

As alleged in this complaint, Dr. Campbell intended to and attempted to cause harmful offensive sexual contact with plaintiff and he had the ability to carry such intention into effect, causing plaintiff severe, substantial, enduring emotional distress, discomfort, and interference with usual life activities. At all times Dr. Campbell's treatment of plaintiff as alleged in this complaint was in his capacity as a resident and employee of OHSU and within the scope and course of his employment at OHSU and OHSU is directly, jointly, and vicariously liable for the acts and omissions of Dr. Campbell as alleged in this complaint. As a result, plaintiff is entitled to a money judgment against Dr. Campbell and OHSU in an amount to be determined by the jury to be fair and reasonable, not to exceed $4.5 million, and punitive damages against Dr. Campbell not to exceed $40.5 million, and reimbursed attorney fees, costs, and disbursements. Plaintiff reserves the right to amend this complaint to adjust the claims for compensation and damages and to add claims and additional defendants, including claims for punitive damages.

**101.**

**Claim 2 – Battery against Dr. Campbell and OHSU**

As alleged in this complaint, Dr. Campbell intended to and did in fact cause harmful offensive sexual contact with plaintiff, causing plaintiff severe, substantial, enduring emotional distress, discomfort, and interference with usual life activities. At all times Dr. Campbell's treatment of plaintiff as alleged in this complaint was in his capacity as a resident and employee of OHSU and within the scope and course of his employment at OHSU and OHSU is directly, jointly, and vicariously liable for the acts and omissions of Dr. Campbell as alleged in this complaint. As a result, plaintiff is entitled to a money judgment against Dr. Campbell and OHSU in an amount to be determined by the jury to be fair and reasonable, not to exceed $4.5 million, and punitive damages against Dr. Campbell not to exceed $40.5 million, and reimbursed attorney fees, costs, and disbursements. Plaintiff reserves the right to amend this complaint to adjust the claims for compensation and damages and to add claims and additional defendants, including claims for punitive damages.

**102.**

**Claim 3 – IIED against Dr. Campbell and OHSU**

As alleged in this complaint, Dr. Campbell's treatment of plaintiff constituted extraordinary transgressions of the bounds of socially tolerable behavior, and was intended by Dr. Campbell to inflict severe emotional distress on plaintiff, and did in fact cause plaintiff severe, substantial, enduring emotional distress, discomfort, and interference with usual life activities. At all times Dr. Campbell's treatment of plaintiff as alleged in this complaint was in his capacity as a resident and employee of OHSU and within the scope and course of his employment at OHSU and OHSU is directly, jointly, and vicariously liable for the acts and omissions of Dr. Campbell as alleged in this complaint. As a result, plaintiff is entitled to a money judgment against Dr. Campbell and OHSU in an amount to be determined by the jury to be fair and reasonable, not to exceed $4.5 million, and punitive damages against Dr. Campbell not to exceed $40.5 million, and reimbursed attorney fees, costs, and disbursements. Plaintiff reserves the right to amend this complaint to adjust the claims for compensation and damages and to add claims and additional defendants, including claims for punitive damages.

**103.**

**Claim 4 – Invasion of Privacy against Dr. Campbell and OHSU**

As alleged in this complaint, Dr. Campbell's treatment of plaintiff was an intentional intrusion into plaintiff's solitude or seclusion or private affairs or concerns which would be highly offensive to a reasonable person, and caused plaintiff severe, substantial, enduring emotional distress, discomfort, and interference with usual life activities. At all times Dr. Campbell's treatment of plaintiff as alleged in this complaint was in his capacity as a resident and employee of OHSU and within the scope and course of his employment at OHSU and OHSU is directly, jointly, and vicariously liable for the acts and omissions of Dr. Campbell as alleged in this complaint. As a result, plaintiff is entitled to a money judgment against Dr. Campbell and OHSU in an amount to be determined by the jury to be fair and reasonable, not to exceed $4.5 million, and punitive damages against Dr. Campbell not to exceed $40.5 million, and reimbursed attorney fees, costs, and disbursements. Plaintiff reserves the right to amend this complaint to adjust the claims for compensation and damages and to add claims and additional defendants, including claims for punitive damages.

**104.**

**Claim 5 – Negligence against All Defendants**

As alleged in this complaint, defendants were negligent in failing to exercise reasonable care during their interactions with plaintiff. Defendants had a duty to maintain OHSU premises in a safe condition for women invited to the premises like plaintiff. Plaintiff was harmed by the negligent treatment by defendants as alleged in this complaint, and plaintiff's harm was due to the acts and omissions of defendants, who were negligent in failing to act as reasonably prudent people. Defendants owed plaintiff special legal duties and defendants' negligent acts and omissions as alleged in this complaint caused plaintiff severe, substantial, enduring emotional distress, discomfort, and interference with usual life activities, all of which were reasonably foreseeable. At all times Dr. Campbell's treatment of plaintiff as alleged in this complaint was in his capacity as a resident and employee of OHSU and within the scope and course of his employment at OHSU and OHSU is directly, jointly, and vicariously liable for the acts and omissions of Dr. Campbell as alleged in this complaint. As a result, plaintiff is entitled to a money judgment against defendants in an amount to be determined by the jury to be fair and reasonable, not to exceed $4.5 million, and reimbursed attorney fees, costs, and disbursements. Plaintiff also seeks an injunction prohibiting OHSU from continuing to operate its hospital in the unsafe manner described in this complaint, and an order requiring OHSU to finally adopt adequate safety procedures and policies to ensure that no other women are needlessly exposed to sexual harassment on its premises.

**105.**

## PRAYER FOR RELIEF

Plaintiff respectfully requests judgment against defendants for the relief sought in this complaint, including maximum interest, and any other relief the Court may deem necessary. Plaintiff reserves the right to amend this complaint to adjust the claims for compensation and damages and to add and remove claims and defendants as information is learned in discovery.

**106.**

## JURY TRIAL DEMAND

Plaintiff respectfully requests a trial by a jury.

DATED: February 26, 2021

RESPECTFULLY FILED,

/s/ Michael Fuller
**Michael Fuller, OSB No. 09357**
Lead Trial Attorney for Plaintiff
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-222-2000

**SEXUAL ASSAULT COMPLAINT** – Page 39 of 39