1

2  **Michael Fuller, OSB No. 09357**
   OlsenDaines
3  US Bancorp Tower
   111 SW 5th Ave., Suite 3150
4  Portland, Oregon 97204
   michael@underdoglawyer.com
5  Direct 503-222-2000
6
7  **Kim Sordyl, OSB No. 031610**
   Sordyl Law LLC
8  422 NW 13th Ave # 751
   Portland, Oregon 97209
9  503-502-1974
10
11 **Emily Templeton**
   Court Certified Law Clerk
12 OlsenDaines
13
   Attorneys for Plaintiff
14
15              UNITED STATES DISTRICT COURT
16                 DISTRICT OF OREGON
17                 PORTLAND DIVISION
18
19
20
   **A.B.**                          Case No. 3:21-cv-00311-HZ
21
                                      **PLAINTIFF'S RESPONSE IN**
22              Plaintiff             **OPPOSITION TO OHSU'S MOTION**
                                      **FOR PROTECTIVE ORDER**
23
           vs
24                                    Oral Argument Requested
   **DR. JASON CAMPBELL**
25 and **OREGON HEALTH &**
   **SCIENCE UNIVERSITY**
26
27
              Defendants
28

**RESPONSE TO MOTION** – Page 1 of 37

## INTRODUCTION

OHSU publicized its motion to news reporters as a request for a protective order. But OHSU is really asking the Court for a form of censorship called a prior restraint. A prior restraint on free speech is "one of the most extraordinary remedies" in the law, and "the least tolerable infringement on First Amendment rights." To obtain a prior restraint, a party must generally meet the high evidentiary burden associated with a temporary restraining order, and must generally prove that unless the Court grants its request for censorship, it will be impossible to have a fair and impartial trial.

The Supreme Court has roundly rejected prior restraint absent circumstances not present in this case. OHSU's motion does not mention the most recent Ninth Circuit case on prior restraint, the 2017 *Dan Farr* opinion. The *Dan Farr* opinion makes clear that "this case is simply not one of the rare instances in which pretrial publicity mandates prior restraints."

Trial is at least two years away. Plaintiff, Dr. Campbell, and OHSU are all making public statements about the case. Plaintiff is a survivor using a pseudonym, and so an order censoring her counsel is essentially an order censoring her. The mere filing and publicizing of OHSU's motion has already had its intended chilling effect on free speech. Continued speech by plaintiff's counsel will not cause a substantial likelihood of materially prejudicing the jury selection process two years from now, and many alternative measures to censorship exist.

For these reasons, OHSU's motion should be denied.

**RESPONSE TO MOTION** – Page 2 of 37

# TABLE OF CONTENTS

**Introduction** ................................................................................ 2

**Table of Contents** ...................................................................... 3

**Table of Authorities** ................................................................. 5

**Legal Standards** ......................................................................... 8

**Relevant Facts** ........................................................................... 11

    1. Trial is two years away. ........................................................ 11

    2. All parties are making public statements. ............................ 11

    3. Plaintiff is a survivor using a pseudonym. ......................... 14

    4. The chilling effect of OHSU's motion. .............................. 15

    5. Plaintiff decided to hold OHSU publicly accountable. ............. 18

**Argument** ................................................................................... 21

    1. OHSU's motion for protective order may be denied because it
       is actually a motion for temporary restraining order. ............. 21

    2. OHSU's motion should be denied because there is insufficient
       evidence of any threat to a fair and impartial trial. ................. 22

**RESPONSE TO MOTION** – Page 3 of 37

2.1. The Portland Division is comprised of numerous counties in
a large metro area and so public comments two years before
jury selection are unlikely to threaten the fairness of trial. .................. 24

2.2. This is a civil case, not a lurid or inflammatory criminal case. ............ 26

2.3. In lieu of the censorship OHSU seeks, if needed at the time of
trial, this Court can instead explore available and appropriate
alternative measures to ensure an impartial jury is empaneled. .......... 29

2.4. Even *if* it could be adopted, OHSU's requested order is one-sided
and overbroad. ........................................................................................ 31

**Conclusion** ........................................................................................... 34

# TABLE OF AUTHORITIES

**Cases**

Am. Trucking Ass'ns Inc. v. City of L.A.
559 F.3d 1046 (9th Cir 2009) .......................................................... 21

Berndt v. Cal. Dep't of Corr.
2004 U.S. Dist. LEXIS 15896 (N.D. Cal. Aug. 9, 2004) ................. 9, 26-27, 32

Clifford v. Trump
2018 U.S. Dist. LEXIS 225869 (C.D. Cal. July 31, 2018) ......................... 9, 24

Columbia Broad. Sys., Inc. v. United States Dist. Court for Cent. Dist.
729 F.2d 1174 (9th Cir 1983) ............................................................ 10

Constand v. Cosby
229 F.R.D. 472 (E.D. Penn. 2005) .................................................... 28

Dan Farr Prods. v. United States Dist. Court
874 F.3d 590 (9th Cir 2017) ...................................... 2, 23-26, 29, 31

Doe v. Hawaii
2011 U.S. Dist. LEXIS 119527 (D. Haw. Oct. 14, 2011) ............................. 22

Doe v. Rose
2016 WL 9107137 (C.D. Cal. Sept. 30, 2016) ..................................... 27-29, 32

Elrod v. Burns
427 U.S. 347 (1976)................................................................... 8

Gentile v. State Bar of Nevada
501 U.S. 1030 (1991) .............................................................. 8-9, 26

**RESPONSE TO MOTION** – Page 5 of 37

Graham v. Weber
2015 U.S. Dist. LEXIS 135343 (D.S.D. Oct. 5, 2015) ................................... 28

Hunt v. Nat'l Broad. Co.
872 F.2d 289 (9th Cir 1989) ..................................................... 10, 25

Kokusai Semiconductor Equip. Corp. v. ASM Int'l, N.V.
2019 US Dist LEXIS 47186 (D. Or. Jan. 25, 2019) ........................................ 11

Levine v. United States Dist. Court for Cent. Dist.
764 F.2d 590 (9th Cir 1985) ........................................ 8-10, 26-27, 32

Lopez v. Brewer
680 F.3d 1068 (9th Cir 2012)...................................................... 21-22

Monterrosa v. City of Vallejo
2021 U.S. Dist. LEXIS 26791 (E.D. Cal. Feb. 10, 2021) .............................. 21

Muhaymin v. City of Phx.
2020 U.S. Dist. LEXIS 99522 (D. Ariz. June 5, 2020)..................................... 9

Nebraska Press Ass'n v. Stuart
427 U.S. 539 (1976) ..................................................... 8, 30

Provenz v. Miller
102 F.3d 1478 (9th Cir 1996) ..................................................... 22

Rosenblum v. Does 1-10
474 F. Supp. 3d 1128 (D. Or. 2020) ................................................. 21

Smith v. Goguen
415 U.S. 566 (1974) ..................................................... 10

**RESPONSE TO MOTION** – Page 6 of 37

Schwartz v. Upper Deck Co.
183 F.R.D. 672 (S.D. Cal. 1999) ....................................................... 22

United States v. McGregor
838 F. Supp. 2d 1256 (M.D. Ala. 2012) ............................................. 9

Underwood v. BSNF Ry. Co.
359 F. Supp. 3d 953 (D. Mont. 2018) ............................................... 33

Winter v. Nat. Res. Defense Council, Inc.
555 U.S. 7 (2008) ............................................................................. 22

**RESPONSE TO MOTION** – Page 7 of 37

**LEGAL STANDARDS**

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976). Accordingly, a court's entry of a prior restraint on speech is "one of the most extraordinary remedies known to our jurisprudence" and is subject to a strict scrutiny type analysis. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 562 (1976). Prior restraints "are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press*, 427 U.S. at 559.

Prior restraints are constitutional only if the (1) the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest; (2) the order is narrowly drawn; and (3) less restrictive alternatives are not available. *Levine v. United States Dist. Court for Cent. Dist.*, 764 F.2d 590, 595 (9th Cir 1985).

In *Gentile v. State Bar of Nevada*, the Supreme Court adopted a less stringent standard for prior restraints of speech against attorneys, in the context of an attorney disciplinary action. 501 U.S. 1030 (1991). In *Gentile*, the Supreme Court rejected the argument that Nevada had to demonstrate a "clear and present danger of actual prejudice or an imminent threat" before discipline could be imposed on an attorney. *Id*. at 1069-74. Instead, the Court held that a speech-restricting rule can pass constitutional muster if it prohibits attorney comments that present a "substantial likelihood of materially prejudicing an adjudicative proceeding." *Id*. at 1075.

**RESPONSE TO MOTION** – Page 8 of 37

After *Gentile*, a gag order restricting an attorney's speech is not constitutionally permissible unless (1) the attorney's speech presents a substantial likelihood of material prejudice to the proceedings; (2) the proposed protective order is narrowly tailored; (3) alternatives to the protective order would not be effective; and (4) the order would be effective in achieving the government's (court's) goal. *See United States v. McGregor*, 838 F. Supp. 2d 1256, 1262 (M.D. Ala. 2012); *Clifford v. Trump,* No. CV 18-02217 SJO (FFMx), 2018 WL 5273913, 2018 U.S. Dist. LEXIS 225869, at *11-16 (C.D. Cal. July 31, 2018). "Since *Gentile*, many lower courts have been reluctant to find that there exists a 'substantial likelihood of material prejudice.'" *Berndt v. Cal. Dep't of Corr.*, No. C03-3174 TEH, 2004 WL 1774227, 2004 U.S. Dist. LEXIS 15896, at *8 (N.D. Cal. Aug. 9, 2004).

Attorneys do not lose their constitutional rights at the courthouse door. *Levine v. United States Dist. Court for Cent. Dist.*, 764 F.2d 590, 595 (9th Cir 1985). While a lower standard applies to prior restraints on the speech of attorneys participating in a case, courts have been hesitant to limit attorney speech when the targeted communications do not violate any applicable order or rule. *Muhaymin v. City of Phx.*, No. CV-17-04565-PHX-SMB, 2020 U.S. Dist. LEXIS 99522, at *8 (D. Ariz. June 5, 2020) (denying defendant's expedited motion to gag plaintiff's counsel from making statements about the case).

A prior restraint to ensure a fair trial is permissible "only if its absence would prevent securing twelve jurors who could, with proper judicial protection, render a verdict based only on the evidence admitted during trial." *Hunt v. Nat'l Broad. Co.*, 872 F.2d 289, 295 (9th Cir 1989). A restraining order is unconstitutionally vague if it fails to give clear guidance regarding the types of speech for which an individual may be punished. *Smith v. Goguen*, 415 U.S. 566, 572-73 (1974). A restraining order is unconstitutionally broad if categorically limits types of statements and does not distinguish between which types of statements pose a serious and imminent threat to the administration of justice and those that do not. *Levine*, 764 F.2d at 599.

The Oregon Rules of Professional Conduct permit attorneys to make public statements concerning pending cases. ORPC 3.6. The rules make clear that even extrajudicial statements known to have a materially prejudicial effect are permitted so long as the statements pertain to the claim or defense involved and the identity of the people involved; information contained in a public record; that an investigation of a matter is in progress; the scheduling or result of any step in litigation; a request for assistance in obtaining evidence and information; a warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest; or to reply to charges of misconduct. *Id.*

A party subject to a prior restraint may immediately petition the Ninth Circuit under 28 U.S.C. § 1651(a) to review the order. *Columbia Broad. Sys., Inc. v. United States Dist. Court for Cent. Dist.*, 729 F.2d 1174, 1177-78 (9th Cir 1983).

**RESPONSE TO MOTION** – Page 10 of 37

## RELEVANT FACTS

**1. Trial is two years away.**

OHSU filed its motion on March 10, after plaintiff's counsel Ms. Sordyl responded to questions from news reporters at a peaceful rally on OHSU's campus organized by OHSU Dr. Sue Aicher in support of the plaintiff in this case. Doc. 13; Exhibit 1. It has been reported that the average length of time between when a case is filed until a case proceeds to a jury trial in Oregon is approximately 22.7 months. *Kokusai Semiconductor Equip. Corp. v. ASM Int'l, N.V.*, No. 3:18-cv-00323-AC, 2019 US Dist LEXIS 47186, at *29 (D. Or. Jan. 25, 2019). Very few civil cases have been tried before a jury in the past year due to the pandemic, and there are now a backlog of civil cases awaiting trial, making it unlikely that this case will be tried in the next two years. Fuller Declaration ¶ 1.

**2. All parties are making public statements.**

At the same time OHSU filed its motion on March 10, OHSU's Strategic Communications Interim Senior Director emailed numerous news organizations with detailed messages "regarding the sexual harassment lawsuit" and commenting on the witnesses and attorneys in this case, and even commenting on OHSU's motion. Fuller Declaration ¶ 2; Exhibit 2; Exhibit 3; Exhibit 4; Exhibit 5. Plaintiff's counsel received emails from KATU Channel 2 News and the *Portland Business Journal* on the afternoon of March 10 asking for comments on OHSU's messages regarding this lawsuit at the same time plaintiff's counsel was reading through OHSU's motion on PACER to censor his comments. Fuller Declaration ¶ 3.

From the very start of this case, OHSU, through its spokespeople including executives, strategic communications directors, publicists, and attorneys, have made various comments about this case, including comments by OHSU to various news organizations about the merits of the allegations in plaintiff's complaint, the strengths of OHSU's defenses, and the reputation and credibility of witnesses. Fuller Declaration ¶ 4; Exhibit 4; Exhibit 5; Exhibit 6; Exhibit 7.

OHSU recently made public statements critical of plaintiff's counsel and about this very motion, arguably misleading the public about the relief OHSU is actually seeking in its motion. Exhibit 8. As KGW Channel 8 News reported, "In her statement, [OHSU Executive Vice President, Chief Administrative Officer and Chief of Staff Connie] Seeley wrote OHSU will file a protective order to stop the plaintiff's attorneys, including Michael Fuller, from '...attacking the personal character of OHSU members and engaging in other abusive tactics.'" Exhibit 8. No statement in the record by Mr. Fuller about this case can fairly be described as either a personal character attack or an abusive tactic.

On March 1, Dr. Campbell's lawyer made statements to news reporters suggesting that plaintiff made her story up and that Dr. Campbell was innocent of the sexual misconduct allegations in the complaint. Exhibit 10. OHSU's Seeley later publicly stated that "we believe the survivor/victim", undercutting Dr. Campbell's credibility. Exhibit 5. OHSU commented on the allegations in plaintiff's complaint, stating that it believed that Dr. Campbell did in fact sexually harass plaintiff. Exhibit 5.

**RESPONSE TO MOTION** – Page 12 of 37

The nonprofit TIME'S UP, directed by OHSU professor Dr. Choo, a key figure described in plaintiff's complaint, made various public statements through her publicist, the TIME'S UP president, and one of her attorneys, about the facts of this case. Doc. 14-3, p. 36; Exhibit 11; Exhibit 12; Exhibit 13. As OHSU's exhibit suggests, TIME'S UP later deleted communications pertaining to this case before OHSU's motion was filed. Doc. 14-3, p. 36.

Plaintiff understands that various other OHSU executives, doctors, and employees have communicated publicly about this case and may have also intentionally deleted communications about this case, helping to give the false impression that plaintiff is the only party in this case making public comments about witnesses and the allegations in the complaint. Exhibit 14. OHSU has also addressed public questions, and questions submitted by members of its own departments, about the allegations in the complaint, about the character of witnesses, namely Dr. Campbell and Dr. Choo, about the circumstances of Dr. Campbell's departure from OHSU, about previous victims who had reported Dr. Campbell to OHSU, and about OHSU's choice to continue promoting Dr. Campbell on Twitter after OHSU received credible reports that Dr. Campbell had sexually assaulted women on and around campus. Exhibit 5; Exhibit 22.

OHSU's motion makes specific reference to statements by plaintiff's counsel on Twitter but does not reference all the statements made by OHSU on its much larger Twitter platform. Mr. Fuller's Twitter account has 5,508 followers. Fuller Declaration ¶ 16. Fuller's Twitter account is a law blog for his law office and performs

**RESPONSE TO MOTION** – Page 13 of 37

First Amendment functions. Fuller Declaration ¶ 16. Ms. Sordyl's Twitter account has 1,156 followers. Fuller Declaration ¶ 16. It is highly unlikely that the individuals who will ultimately make up the jury pool in this case two years from now are currently following plaintiff's counsels' Twitter accounts. Fuller Declaration ¶ 16. If any potential jurors turn out to have seen any comments about this case online, which is highly, highly unlikely, it is more likely that potential jurors saw comments about this case made on OHSU's Twitter account, which has 15,800 followers, or OHSU's Instagram account, which has 13,400 followers. Fuller Declaration ¶ 16; Exhibit 19. As one blogger recently put it, "OHSU has a bullhorn, we have conviction. They have control of the institutional email system and website, and are using it to try to convince you that what they have done and how they are acting is not wrong." Exhibit 9.

### 3. Plaintiff is a survivor using a pseudonym.

Plaintiff is a social worker at the VA hospital and cannot afford strategic communications directors or publicists. Fuller Declaration ¶ 5. Plaintiff's contingency lawyers are the only professional help she has to communicate with the public on her behalf and respond to questions about this case. Fuller Declaration ¶ 6.

Plaintiff hired her counsel not only as litigators but also as advocates. Fuller Declaration ¶ 7. Plaintiff's counsel are vocal advocates for justice in the community, and plaintiff hired her counsel for this very reason. Fuller Declaration ¶ 8; Sordyl Declaration ¶¶ 1-3.

**RESPONSE TO MOTION** – Page 14 of 37

Plaintiff's professional services agreement with her counsel specifically states that plaintiff hired her counsel to perform various First Amendment functions in addition to litigation, including to, "provide case information to the public and the media through email, blog, twitter, in person, at press conferences, and over the phone, and perform other related functions to assist client, discuss the case for educational purposes, and raise awareness about the case." Fuller Declaration ¶ 9.

Plaintiff filed this case in part based on her belief that OHSU is in desperate need of a spotlight and a culture change, and she hired her counsel to put OHSU in the spotlight and to call out wrongdoers by name. Sordyl Declaration ¶ 3.

Plaintiff is proceeding anonymously in this case thus far. So practically, the comments she makes about the case and her responses to questions from news reporters must generally come through her counsel, to avoid risking the disclosure of her identity. Sordyl Declaration ¶ 4.

### 4. The chilling effect of OHSU's motion.

OHSU sought to confer on its motion after Ms. Sordyl attended a peaceful rally of about 100 OHSU doctors, professors, pharmacists, radiologists, and medical students to protest OHSU's handling of sexual misconduct allegations on campus. Exhibit 1; Exhibit 15. At the rally, Ms. Sordyl responded to questions from news reporters on behalf of her client about this case. Exhibit 1.

The tone of the rally was highly critical of OHSU. Exhibit 1; Exhibit 16. The rally was organized by Dr. Sue Aicher, who has worked at OHSU for 20 years. Exhibit 1; Exhibit 16. "I think for many of us, [plaintiff's] story just really resonates

**RESPONSE TO MOTION** – Page 15 of 37

and we feel like it's time for real action at OHSU," Aicher said, addressing the crowd. Exhibit 1; Exhibit 16. "This needs to be a safe work environment for everyone." Exhibit 1; Exhibit 16. Aicher said she was "sickened but not surprised" by how OHSU officials handled this case. Exhibit 1; Exhibit 16. Aicher said she wasn't surprised to learn of the lawsuit or the allegations in it. Exhibit 1; Exhibit 16. "I think the part that shocked me the most was this was a flagrant assault and nothing was done." Exhibit 1; Exhibit 16. She and the others that gathered on the campus were there demanding accountability and change from OHSU. Exhibit 1; Exhibit 16. "If they can't stop sexual assault, then how do they stop harassment and intimidation and all the other stuff that comes with it?" Aicher said at the rally. Exhibit 1; Exhibit 16. A coalition of unions representing OHSU workers attended the rally, including AFSCME Local 328, the Graduate Researchers United and OHSU House Officers Union, and issued a statement condemning a pattern of silence by the OHSU administration. Exhibit 1; Exhibit 16. AFSCME Local 328 later demonstrated against OHSU executive Laura Stadum in concert with plaintiff's counsel and in solidarity with plaintiff. Exhibit 21. After the rally, Seeley banned all further communications critical of OHSU by employees such as Dr. Aicher.

During conferral, OHSU said its motion would be limited to an order "barring plaintiff's counsel from continuing to post information about potential witnesses in this case attacking their credibility", whether or not such information was truthful, presumably to protect Dr. Choo and the continued viability of Dr. Choo's consulting business and celebrity status. Doc. 14-3, pg. 38; Exhibit 15; Exhibit 22 ("How come

**RESPONSE TO MOTION** – Page 16 of 37

people like Dr. Choo were tagging and taking pictures on twitter with JC after knowing this was happening?")

During conferral, plaintiff's counsel inquired as to the form of the proposed order OHSU was seeking, and asked whether the order was narrow and applied equally to all participants in this case, or just to plaintiff or her counsel. Fuller Declaration ¶ 10. The motion OHSU actually filed sought a much broader prior restraint than the narrow relief described in OHSU's conferral email, and differed from the relief OHSU told news reporters it was seeking. Exhibit 8; Exhibit 15. OHSU conceded during conferral that the Court may not grant the motion anyway, leaving plaintiff's counsel to believe OHSU may have ulterior motives for filing and publicizing its motion. Fuller Declaration ¶ 11.

Out of concern that OHSU's demand to immediately confer on its motion was an attempt to chill the speech of plaintiff and her counsel and to deter another union rally outside OHSU's campus and to curb further comments critical of Dr. Choo, and in light of several pending requests for interviews with news reporters, and believing the motion lacked the required evidentiary support, plaintiff's counsel sought to promptly raise the matter with the Court, and sought expedited consideration. Fuller Declaration ¶ 12.

Regardless of how the Court rules, OHSU's motion has already had its intended effect of chilling the advocacy of plaintiff and her counsel (and others, explained *infra*), and of attempting to frame the case in OHSU's favor to the Court as early as possible in the litigation. Fuller Declaration ¶ 13. OHSU's motion,

**RESPONSE TO MOTION** – Page 17 of 37

combined with OHSU's public statements about the motion, have caused at least one news article to suggest that Mr. Fuller was "attacking the personal character of OHSU members and engaging in other abusive tactics." Exhibit 8. This suggestion is false. No statement in the record by Mr. Fuller pertaining to this case can fairly be described as either a personal character attack or an abusive tactic. Regardless, the damage caused by the motion, and Seeley's publicity of it, has been done, and OHSU's goal of creating a chilling effect has been accomplished.

The chilling effect caused by OHSU's motion and OHSU's public statements about its motion reaches even beyond this case. On March 15, Mr. Fuller received an email from another victim's advocate representing two women against a university. Exhibit 17. The attorney wrote Mr. Fuller worried that OHSU's tactic of gagging plaintiffs' counsel may now be copied by the university in her case. Exhibit 17.

## 5.  Plaintiff decided to hold OHSU publicly accountable.

OHSU's motion is critical of plaintiff because she chose to raise awareness about OHSU's alleged pattern and practice of burying the complaints of survivors who report sexual misconduct against male OHSU doctors. Doc. 14-1, pg. 41-44. OHSU's own meeting notes suggest plaintiff was not alone in her concerns that OHSU was secretly burying complaints of survivors. Exhibit 22 ("Dr. Ma. Dr. Dolan. Dr. Cambpell. Why were all of these stories buried?") ("Given the history of OHSU of denying and not attending to sexual harassment charges how do you see a path forward for staff? I was sickened today by Sharon Anderson's email.")

**RESPONSE TO MOTION** – Page 18 of 37

The source of OHSU's criticism is likely the public outpouring of support plaintiff has received for her choice to come forward, and the outpouring of criticism OHSU has received for the alleged choices it made in handling plaintiff's complaint. Fuller Declaration ¶ 14.

In particular, OHSU professor Dr. Choo has been excommunicated by many in the medical community based on her alleged role in the coverup of sexual assault complaints, and Dr. Choo has been publicly criticized nationally for her handling of plaintiff's complaint. Exhibit 11; Exhibit 12. *The Hollywood Reporter* recently reported that 18 members of Dr. Choo's own board of directors resigned after learning of Dr. Choo's behavior including comments critical of survivors, and racist comments substantiated by Dr. Choo's own text messages and Twitter comments. Exhibit 13; Complaint ¶ 69. Hollywood celebrity Rose McGowan recently made statements in support of plaintiff's decision to raise public awareness and critical of OHSU executive Dr. Choo and TIME'S UP as referenced in plaintiff's complaint. Exhibit 13; Complaint ¶ 63. Public statements from plaintiff's counsel, both to news reporters and on Twitter, have helped keep the public up-to-date in the news and on the Internet about this case, just as OHSU's spokespeople have, and about events like peaceful rallies and protests in support of plaintiff. Levario Declaration ¶ 2. The tone of plaintiff's counsel's statements has been met with support from many (though certainly not all) members of the OHSU community and has helped encourage and give strength to OHSU employees who now feel more comfortable sharing their stories. Levario Declaration ¶ 4.

**RESPONSE TO MOTION** – Page 19 of 37

The statements from Mr. Fuller cited in OHSU's motion have been based in fact and in compliance with Oregon's professional rules on trial publicity. Fuller Declaration ¶ 15. None of the statements by Mr. Fuller were reasonably known to prejudice a trial in this case, considering that trial is at best two years in the future, let alone to "materially" prejudice a trial in this case. Plaintiff's detailed 39-page complaint in this case names over a dozen OHSU executives and employees, and alleges various levels of misconduct. Plaintiff's counsel are within their rights to publicly comment on the various aspects of this case and to advocate for their client.

Prior to filing this action, plaintiff's counsel hired independent ethics counsel to advise them of the legal ethics pertaining to their communications and advocacy on behalf of their anonymous client. Fuller Declaration ¶ 15; Exhibit 17. Plaintiff's counsel takes the professional rules very seriously. Fuller Declaration ¶ 15. While certain public statements of plaintiff's counsel may not comport with traditional notions of what it means to be lawyerly, the public statements are factual and otherwise protected by the First Amendment. Fuller Declaration ¶ 15.

## ARGUMENT

**1. OHSU's motion for protective order may be denied because it is actually a motion for temporary restraining order.**

OHSU's motion is filed and publicized as a motion for a protective order. The motion should have actually been filed and publicized as a motion for temporary restraining order (TRO). *See Monterrosa v. City of Vallejo*, No. 2:20-cv-01563-TLN-DB, 2021 U.S. Dist. LEXIS 26791, at *37-40 (E.D. Cal. Feb. 10, 2021) ("Defendants' motion for protective order is more properly construed as a motion for a temporary restraining order" … "as the requested relief does not seek to limit the scope or method of discovery" … but instead asks "the Court to restrain Plaintiffs' counsel from making specific statements during the pendency of the instant action. … For the foregoing reasons, the Court denies Defendants' Motion for Protective Order without prejudice to refiling as a motion for a TRO".)

The standard for a TRO is essentially identical to the standard for a preliminary injunction. *Rosenblum v. Does 1-10*, 474 F. Supp. 3d 1128, 1132 (D. Or. 2020) (internal quotation marks and citations omitted). "A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir 2012). In order to meet this burden, the moving party must establish that they are "likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns*

*Inc. v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir 2009) (quoting *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 21 (2008)).

OHSU's motion is not supported with the type of evidence necessary to carry its burden of persuasion "by a clear showing" under the appropriate legal standard above. *Lopez*, 680 F.3d at 1072. OHSU is now prohibited from arguing a different legal standard than the standard contained in its motion, and OHSU cannot now submit new evidence to address the fact that it filed its motion according to the wrong rule or standard. *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 682 (S.D. Cal. 1999) (citing *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir 1996) ("It is well accepted that the raising of new issues and submission of new facts in [a] reply brief is improper."). For this reason, the Court may deny OHSU's motion.

### 2. OHSU's motion should be denied because there is insufficient evidence of any threat to a fair and impartial trial.

OHSU's motion should be denied on the merits. "Because the potential for injury to the integrity of the judicial process is significant in cases involving trial publicity, a court may restrict publicity in certain circumstances. However, only the occasional case presents a danger of prejudice from pretrial publicity. To determine whether a case presents a danger of prejudice from pretrial publicity, a court must balance the interests of ensuring the integrity of the judicial process, including the right to a fair and impartial jury, with the competing First Amendment rights of the attorneys publicizing the case." *Doe v. Hawaii*, No. 11-00550 DAE-KSC, 2011 WL 4954606, 2011 U.S. Dist. LEXIS 119527, at *5 (D. Haw. Oct. 14, 2011) (internal quotation marks and citations omitted). "To strike that balance, courts may issue a

**RESPONSE TO MOTION** – Page 22 of 37

protective order (otherwise known as a 'gag order') when a substantial likelihood of material prejudice may result from the extrajudicial statements. Additionally, the order must be 'narrowly drawn' and no 'less restrictive alternatives' may be available, such as voir dire, change of venue or some other device." *Id*. at *6 (internal quotation marks and citations omitted).

Recently, the Ninth Circuit overturned a district court's order limiting a litigant's free speech rights from "making public statements prior to and during trial on certain topics relevant to the merits of the case.*"Dan Farr Prods. v. United States Dist. Court*, 874 F.3d 590, 592 (9th Cir 2017). The plaintiff argued that defendants' objective was to taint the jury pool and win the case in the court of public opinion. *Id*. The plaintiff submitted evidence of the defendants' numerous social media posts expressing their opinions on the merits of the case, responses to those posts, press releases, pages from defendants' website with links to news articles on the case and documents filed with the court, and an online news article quoting one of the defendants. *Id*. Finding that the defendants' "comments, posts, and actions were threatening [the plaintiff's] constitutional right to a fair trial", the court granted an order prohibiting the defendants from, *inter alia*, making a variety of statements about the facts of the case on social media or otherwise. *Id*.

The Ninth Circuit noted that "[t]here is no dispute that the district court's orders are prior restraints on speech" and that [t]here is a heavy presumption against prior restraints on speech, and they are subject to the strict scrutiny standard of review." *Id*. at 593 n.2. The court then held that "[t]he orders at issue

**RESPONSE TO MOTION** – Page 23 of 37

are unconstitutional prior restraints on speech. They prohibit speech that poses neither a clear and present danger nor a serious and imminent threat to [the plaintiffs'] interest in a fair trial. The well-established doctrines on jury selection and the court's inherent management powers provide an alternative, less restrictive, means of ensuring a fair trial." *Id*. at 393. The court went on to explain the basis for its holding in detail, and the factors that led the Ninth Circuit to vacate the district court's order mandate this Court's rejection of the prior restraint order that OHSU seeks here.[1]

### 2.1. The Portland Division is comprised of numerous counties in a large metro area and so public comments two years before jury selection are unlikely to threaten the fairness of trial.

In *Dann Farr*, the court reiterated that "[a] prior restraint to ensure a fair trial is permissible only if its absence would prevent securing twelve jurors who could, with proper judicial protection, render a verdict based only on the evidence admitted during trial." (internal quotation marks and citation omitted). The court rejected the district court's evidentiary assumptions in support of its gag order. *Inter alia,* the Ninth Circuit noted that the "district court draws prospective jurors from a

---

[1] The court noted in a footnote that it did not need to address or apply the lower "substantial likelihood of material prejudice" standard for prior restraints of attorneys participating in a case because that standard did not apply to the case at hand given the order was directed at a party to the case rather than attorneys. *Dan Farr*, 874 F.3d at 593 n.3. Although here OHSU requests an order restraining plaintiff's counsels' speech, the basis for the Ninth Circuit's decision regarding the supposed tainting of the jury pool, the requirement that the order be narrowly tailored, and that there must be no other less restrictive alternatives to the restraint, are equally applicable to a case restraining attorney speech. *See, e.g.*, *Clifford,* 2018 WL 5273913, 2018 U.S. Dist. LEXIS 225869, at *11-16.

**RESPONSE TO MOTION** – Page 24 of 37

list of approximately 1.75 million registered voters in San Diego and Imperial Counties. Simply stated, there is no evidence connecting the scope of [the defendants'] speech with the relevant jury pool." *Id*. at 594. The court noted that even when overestimating the percentage of the jury pool that would have been exposed to the defendants' statements about the case, an estimated "8.9 percent of the relevant jury pool…is insufficient to demonstrate that twelve unbiased jurors could not be found absent the restraining orders." *Id*. (citing to *Hunt*, 872 F.2d at 295) (finding that where a pre-trial television broadcast would likely reach more than 20 percent of adults in the relevant area, "there remain[ed] an extremely large pool of untainted potential jurors from which to draw twelve.").

The Ninth Circuit also pointed to the lack of any evidence that anyone who actually read the defendants' postings or articles about the case was a member of the jury pool and the district court's failure to assess "whether the community from which the jury will be drawn is small and rural, or large, populous, metropolitan, and heterogeneous." *Id*. (citing to *Hunt,* 872 F.2d at 294-95).

Like in *Dan Farr*, OHSU provides no support that the media coverage of this case has been exposed to potential jurors, or any evidence that the OHSU members who have expressed support for plaintiff via her counsel's Twitter posts will be part of the jury pool. This lack of evidentiary support is fatal to OHSU's motion.

OHSU also provides no requisite evidence connecting the scope of plaintiff's counsels' speech with the relevant jury pool. This Court draws prospective jurors from eleven counties, including Multnomah County and Washington County. *See*

**RESPONSE TO MOTION** – Page 25 of 37

https://www.ord.uscourts.gov/index.php/jurors#locations. Just these two counties have close to 1 million registered voters.[2] [3] The community from which the jury pool will be drawn from in this case is populous, large, mostly urban, and metropolitan. As in *Dan Farr*, the sheer lack of evidence by OHSU addressing these requirements is fatal to the high burden required to infringe upon the free speech rights of plaintiff and her counsel. *See also Berndt*, 2004 WL 1774227, 2004 U.S. Dist. LEXIS 15896, at *10-11 ("Defendants' proposed order does not meet the requirements outlined in *Levine*, as modified by *Gentile*. First, Defendants do not present any evidence of how Ms. Price's extra-judicial statements impair the fairness of the impending trial or threaten the integrity of the judicial system.").

### 2.2. This is a civil case, not a lurid or inflammatory criminal case.

In *Dann Farr*, the Ninth Circuit noted that whether "the subject matter of the case is lurid or highly inflammatory" is a factor that also needs to be evaluated. In that case, the court noted that the civil case before it "involves issues that are far more banal than the subject matters of the criminal trials in which pretrial publicity has presented serious constitutional problems." *Dan Farr*, 874 F.3d at 594. The civil-criminal distinction is a critical one, because of the heightened duty of the court in

---

[2] Multnomah County reports 571,444 registered voters in the November 3, 2021 election. https://multco.us/elections/historical-turnout-and-registration-statistics

[3] Washington County reports 386,016 registered voters in the November 3, 2021 election. https://www.co.washington.or.us/AssessmentTaxation/Elections/CurrentElection/current-turnout.cfm

**RESPONSE TO MOTION** – Page 26 of 37

protecting the accused's rights under the Sixth Amendment to a fair and impartial trial. *See Levine*, 764 F.2d at 596. The rare cases that have applied or upheld restraints on pretrial publicity, including those cited by OHSU in its motion, have almost exclusively been criminal cases. *See, e.g., Berndt*, 2004 WL 1774227, 2004 U.S. Dist. LEXIS 15896, at *7 ("Although Defendants' motion proposes a series of questions that are identical to those suggested for defense counsel in *Levine*, 764 F.2d at 599, *Levine* was a very different case involving criminal proceedings that were highly publicized in national and local media. By contrast, there is no indication that this civil trial will be highly publicized. Under these circumstances, Defendants' proposed order is overbroad."); *Doe*, 2011 WL 49546062011 U.S. Dist. LEXIS 119527, at *13-14 (comparing the civil case at hand with *Levine* and *Sheppard v. Maxwell* (384 U.S. 333 (1966)), noting that these cases were extraordinary criminal cases and finding that the attorney's "statements simply do not rise to the high level necessary to justify issuing a protective order.").

While the allegations in plaintiff's complaint against OHSU made headlines because the public was previously unaware of OHSU's alleged behavior, there is no indication that the civil trial in this case two years from now to resolve plaintiff's negligence claim against OHSU will be highly publicized like a lurid or highly inflammatory criminal trial.

OHSU relies heavily on an outlier Central District of California case, *Doe v. Rose*, No. CV-15-07503-MWF-JCX, 2016 WL 9107137 (C.D. Cal. Sept. 30, 2016) involving NBA All-Star Derrick Rose. In *Rose*, the court did find that a substantial

**RESPONSE TO MOTION** – Page 27 of 37

likelihood of material prejudice existed and issued a restraining order analogous to the order OHSU requests the Court enter here. *Id*. at *6. But the facts in *Rose* are inapposite. *Inter alia*, the barrage of media releases in *Rose* included that defendant's counsel "trumpeted information regarding Plaintiff's sexual behavior and history" and the prior restraint applied to both parties equally. *Id* at *2. Most important – in *Doe* the court recognized that "the parties' attempts to litigate their respective cases with the press have increased as the trial date has drawn near" and noted that its decision to grant the restraining order occurred on the "eve of trial" in response to media coverage at that time. *Id*. at *4. On this point, the court contrasted the denial of a restraining order in another high-profile civil proceeding, *Constand v. Cosby*, 229 F.R.D. 472 (E.D. Penn. 2005), explaining that "[u]nlike this action, however, *Constand* was only in the discovery phase when the court denied the defendant's motion. The court thus had no need, at that point in the litigation, to be concerned about prejudice once the jury was empaneled.") (internal citation omitted). The proximity of the prior restraint order in *Rose* to the nearing trial date clearly distinguishes *Rose* from the facts of this case.

Here, this case was filed less than a month ago, Dr. Campbell still has yet to file an answer, and it is far too early in the litigation to assess whether any pretrial publicity will have any impact on a potential trial that is unlikely to be conducted any time soon. *See, e.g.*, *Graham v. Weber*, No. CIV 13-4100, 2015 WL 5797857, 2015 U.S. Dist. LEXIS 135343, at *29 (D.S.D. Oct. 5, 2015) ("The Court denies the requested gag order as the extrajudicial statements in issue do not pose a substantial

**RESPONSE TO MOTION** – Page 28 of 37

likelihood of materially prejudicing the pending adjudicatory proceeding. In addition, the statements at issue do not warrant a gag order to prevent possible prejudice in the event a retrial takes place sometime in the future. Any prejudice from statements would have to be evaluated for their impact at the time of any future trial proceedings. Any present action based on the possibility of a future trial at some date well into the future is too speculative.").

The difference in the timing of the prior restraint sought in *Rose* (on the eve of trial) and the timing of the prior restraint sought by OHSU in this case (before the start of discovery, two years from trial) warrants denial of OHSU's motion. Even OHSU conceded during conferral that the Court may well deny the motion at this stage. Further, the order in *Rose* was issued before the Ninth Circuit's detailed explanation of the evidence that the Court needs to assess to satisfy the high burden of restraining free speech and clarifying the viability of available alternative remedies, especially proper voir dire (discussed *infra*). As in *Dan Farr*, all of the requisite factors indicate that "this case is simply not one of the rare instances in which pretrial publicity mandates prior restraints." *Dan Farr*, 874 F.3d at 594.

### 2.3. In lieu of the censorship OHSU seeks, if needed at the time of trial, this Court can instead explore available and appropriate alternative measures to ensure an impartial jury is empaneled.

In *Dan Farr*, the Ninth Circuit also set aside the court's orders because "prior restraint is not the least restrictive means of ensuring a fair trial here." *Dan Farr*, 874 F.3d at 595. The court noted that it had "previously approved voir dire, jury instructions, delay, change of venue or jury sequestration as appropriate

**RESPONSE TO MOTION** – Page 29 of 37

alternatives preferable to censorship." *Id.* (internal quotation marks and citations omitted). The district court had found "voir dire insufficient because it would entail excluding from the jury all citizens who have read or heard about the case and who keep abreast of current events." *Id.* at 595. In rejecting that reasoning, the Ninth Circuit explained that "voir dire means nothing of the sort—rather, it screens out those with fixed opinions as to guilt or innocence." *Id.* (internal quotes and citation omitted).

The Ninth Circuit further rejected the district court's finding that jury instructions would be inadequate because "the Court cannot run the risk of thinking the jury will do as the Court says", holding that the Ninth Circuit and the Supreme Court "have repeatedly recognized a rebuttable presumption that juries follow jury instructions." *Id.* As to sequestration, the Ninth Circuit questioned the district court's findings because "juror inconvenience alone cannot outweigh Petitioners' exercise of fundamental First Amendment rights." *Id.* at 596. The Ninth Circuit concluded its 'other alternatives' discussion by holding that, "[i]n addition to improperly analyzing each alternative, we note that the district court's logic disqualified alternatives categorically and would justify imposition of prior restraints in almost any situation where an article is written or a statement is made in a public forum." *Id.* (citing to *Nebraska Press*, 427 U.S. at 554) ("[E]ven pervasive, adverse publicity does not inevitably lead to an unfair trial."). The Ninth Circuit also held that in rejecting these other viable alternatives "the district court rejected binding precedent that voir dire, sequestration, and jury instructions can be

**RESPONSE TO MOTION** – Page 30 of 37

alternatives to prior restraints. This record does not demonstrate that those alternatives are unavailable or inappropriate, and any imposition of a prior restraint must be based on case-specific justifications for why less extreme measures are not viable alternatives." *Id*. (internal citation omitted).

OHSU argues that the well-recognized alternatives to a gag order impinging on counsel's free speech rights are not viable because "[a]t this early stage in the litigation, none of these alternatives sufficiently protect against the prejudicial effect of the publicity being generated by plaintiff's counsel." Doc. 13 at 9. This argument perverts the applicable standard. As explained *supra*, one of the reasons that OHSU's motion should be denied is because it is premature and speculative in regard to any effects on the jury. Arguing that the recognized alternatives to prior restraints on speech are unviable because the case is far from trial is circular and fallacious and must be rejected. If needed at all, there are clearly less extreme measures that are viable alternatives to OHSU's motion for a broad, vague prior restraint that can be adopted, if and when the trial nears, depending on the circumstances that exist at that time. OHSU's argument here underscores that OHSU's true motive in filing its motion has little to do with ensuring an impartial jury and instead has more to do with curtailing speech that OHSU finds harmful or critical.

### 2.4.   Even *if* it could be adopted, OHSU's requested order is one-sided and overbroad.

In *Dan Farr*, the court stated that "[u]nlike other cases involving attorneys or the press, grisly crimes or national security, the district court's orders silence one side of a vigorously litigated, run-of-the-mill civil trademark proceeding." *Dan Farr*,

**RESPONSE TO MOTION** – Page 31 of 37

874 F.3d at 596. Despite its own organized media statements about this case and about this very motion, OHSU "moves for an order [unilaterally] restricting plaintiff's counsel and anyone acting in concert with them, from continuing to make public statements relating to: (1) The character, credibility, or reputation of a party or potential witness; (2) The strengths or weaknesses of the case of any party; and (3) Any other information the attorneys know or reasonably should know is likely to be inadmissible as evidence and would create a substantial risk of prejudice." Doc. 13 at 2. Even in the primary case that OHSU relies on, the court's order was directed at both parties. *See Rose*, 2016 WL 9107137, at *6.

OHSU claims that the scope of its requested order is narrowly tailored because it is analogous to the subjects that the Ninth Circuit stated would be appropriate in *Levine*. But as explained in detail, this case is not *Levine*. *See also Berndt*, 2004 U.S. Dist. LEXIS 15896, at *12 (holing that "the proposed order is not narrowly drawn. Although Defendants' motion proposes a series of questions that are identical to those suggested for defense counsel in *Levine*, 764 F.2d at 599, *Levine* was a very different case involving criminal proceedings that were highly publicized in national and local media. By contrast, there is no indication that this civil trial will be highly publicized. Under these circumstances, Defendants' proposed order is overbroad."). As noted in *Rose,* "[i]n other words, the Court is ordering the lawyers to do what they already have an obligation to do. The congruence between the partial restraining order and counsel's ethical obligations illustrates how limited and appropriate this partial restraining order is." *Rose*, 2016 WL 9107137, at *6 (citing

**RESPONSE TO MOTION** – Page 32 of 37

to Model Rules of Professional Conduct Rule 3.6). As noted *supra*, plaintiffs' counsel is well aware of their ethical obligations regarding publicity and have acted accordingly. There is no justified basis for the Court to issue a restraining order that simply reiterates the requirements of Oregon's professional rules. *See, e.g., Underwood v. BSNF Ry. Co.*, 359 F. Supp. 3d 953, 955-60 (D. Mont. 2018) (noting that counsel had complied with Rule 3.6 and finding that a protective order is not warranted).

OHSU's proposed order is also unconstitutionally broad because it seeks to limit the speech not only of plaintiff's counsel acting on plaintiff's behalf but also "anyone acting in concert with them." Doc. 13 at 2. Literally dozens of women, some employed by OHSU, some not, some in Oregon, some not, some in the United States, some not, some known to plaintiff or her counsel by name, some known only by online handle or pseudonym, are working in concert with plaintiff's counsel, as well as local union leaders, making public statements critical of OHSU and its reputation, and statements pertaining to the weaknesses of OHSU's defenses in this case, and general statements about this case, and to organize peaceful rallies and protests and demonstrations, and to encourage other witnesses to come forward. Fuller Declaration ¶ 17; Exhibit 21. OHSU's motion, and OHSU's publicity of its motion, is already having a chilling effect on these women, as well as plaintiff and her counsel, as indicated by the message by one of the women who lives in Canada and questioned the idea that she too may be subject to OHSU's proposed order by acting in concert with plaintiff's counsel on Twitter. Exhibit 20. Finally, OHSU's proposed order is

**RESPONSE TO MOTION** – Page 33 of 37

vague, to the extent it does not define words like "character", "credibility", "reputation", "strengths", "weaknesses", "substantial risk of prejudice" etc., and to the extent it seeks to restrain any public comment pertaining to the credibility of OHSU, whether or not the comment even pertains to this case, with no end date.

## CONCLUSION

A plaintiff is not required to trade in their First Amendment rights in order to exercise their Seventh Amendment rights, and attorneys to not lose their First Amendment rights at the courthouse door. This case is two years from trial, and the various comments made by plaintiff's counsel related to the case do not stand to interfere with the parties' rights to a fair and impartial jury trial, no more than the various comments made by OHSU about this case stand to interfere with the parties' rights to a fair and impartial jury trial.

The timing of OHSU's motion, less than a month after this case was filed, and after plaintiff's counsel answered questions from news reporters at a peacefully rally on OHSU's campus, and after OHSU's professor Dr. Choo was excommunicated by members of the medical community, and after 18 of Dr. Choo's board members resigned in protest of her alleged behavior in this case, all point to the conclusion that OHSU's motion has much to do with avoiding bad press for its executives and celebrities and much less to do with any legitimate concern about the ability of the Court to select a fair jury over two years from now.

**RESPONSE TO MOTION** – Page 34 of 37

The chilling effect sought by OHSU has been accomplished through the publicizing of its motion, and it would not surprise plaintiff if OHSU now withdrew the motion. Respectfully, if OHSU's motion is not withdrawn, this Court should deny it, based on the appropriate legal standards and the evidence in the record.

March 17, 2021

RESPECTFULLY FILED,

s/ Michael Fuller
**Michael Fuller, OSB No. 09357**
Lead Trial Attorney for Plaintiff
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-222-2000

**RESPONSE TO MOTION** – Page 35 of 37

# CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 7,651 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

March 17, 2021

s/ Michael Fuller
**Michael Fuller, OSB No. 09357**
Lead Trial Attorney for Plaintiff
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-222-2000

**RESPONSE TO MOTION** – Page 36 of 37

1

2
## CERTIFICATE OF SERVICE

3
I caused this document to be served on all parties who have appeared in this action
4
through the CM/ECF system.

5

6
March 17, 2021

7
                                        s/ Michael Fuller
8
                                        **Michael Fuller, OSB No. 09357**
9
                                        Lead Trial Attorney for Plaintiff
                                        OlsenDaines
10
                                        US Bancorp Tower
11
                                        111 SW 5th Ave., Suite 3150
                                        Portland, Oregon 97204
12
                                        michael@underdoglawyer.com
13
                                        Direct 503-222-2000

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**RESPONSE TO MOTION** – Page 37 of 37